(915 P.2d 779)

No. 73,847

LAFE D. GILMORE, *Appellee*, v. DAVID R. MCKUNE, Warden,
Lansing Correctional Facility, *Appellant*.

—

Opinion filed December 15, 1995.

*Linden G. Appel*, deputy chief counsel, Department of Corrections, of Topeka, for appellant.

*Charles J. Cavenee*, of Legal Services for Prisoners, Inc., of Lansing, for appellee.

Before BRAZIL, C.J., GERNON and ROYSE, JJ.

BRAZIL, C.J.: In this habeas corpus action, David R. McKune, the warden of Lansing Correctional Facility (LCF), appeals the

district court order that he restore to Lafe D. Gilmore all good time credits withheld based upon Gilmore's refusal to participate in various assigned rehabilitative programs. We reverse, finding that the district court erred as a matter of law in its interpretation of pertinent regulations promulgated by the Secretary of Corrections.

The parties agree to the essential facts. Gilmore first agreed to complete mental health and sex offender programs as a contingency of his parole release, then later filed a formal refusal to participate in the LCF Sex Offender Treatment Program. Because of his refusal to enter into these programs, LCF officials decided not to award Gilmore any good time credits during the review periods coinciding with his refusal. After exhausting his administrative remedies, Gilmore filed a petition for writ of habeas corpus in the district court. The district court found that the provision relied upon by prison officials, K.A.R. 44-6-124(g)(6), was in direct conflict with K.A.R. 44-5-105(c)(1) and ordered McKune to restore Gilmore's good time credits to the extent they were withheld solely because of his refusal to participate in the programs.

At issue on appeal is whether withholding good time credits under K.A.R. 44-6-124(g)(6) constitutes a penalty under K.A.R. 44-5-105(c)(1), thus making the two regulations irreconcilable.

K.A.R. 44-5-105(c)(1), part of the regulatory section addressing inmate program plans, provides:

"Any inmate may elect not to participate in a formal program plan. In such an event, that inmate shall not be prohibited from participating in any programs as are available, but the inmate shall first obtain the recommendation and approval of the unit team. The unit team may recommend the inmate for parole eligibility based on the inmate's rehabilitation progress accomplished by the inmate's own initiative. *The inmate shall not be penalized for refusal to participate in a formal program plan*. The inmate shall nevertheless be subject to all the regulations of the secretary and the orders of the principal administrator, and shall be required to participate in any work assignments which are made by the unit team." (Emphasis added.)

K.A.R. 44-6-124(g)(6) falls under the section which specifically addresses the award of good time credits and provides:

"A pattern of refusal by an inmate to constructively work or participate in assigned programs shall result in the *withholding of 100% of the good time credits* for that program classification review period, unless the inmate is determined by the facility health authority to be physically or mentally incapable of working or participating in a particular program or detail." (Emphasis added.)

In resolving any conflicts between these regulations, this court gives deference to the Department of Corrections' interpretation of its own regulations. Also, a common rule of construction normally applied to statutory interpretation is useful here as well: "'In order to ascertain . . . intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia.*'" *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992) (quoting *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 [1975]).

As relevant here, the definition section within the regulations provides: " 'Award of good time credits' means the act of the unit team, as approved by the program management committee and the warden or designee, granting all or part of the allocation of credits available for the time period under review," K.A.R. 44-6-101(d), and " '[f]orfeiture of good time credits' means the removal of the credits and consequent reinstatement of a term of actual imprisonment by the disciplinary board pursuant to K.A.R. article 44-12 and K.A.R. article 44-13 as published in the inmate rule book." K.A.R. 44-6-101(e). The withholding of good time credits is not formally defined in the regulations. As will be shown, however, when the Secretary uses the term "withholding" in the regulations, the Secretary effectively defines the term as the act of not awarding good time credits pursuant to K.A.R. 44-6-101(d).

A review of the regulations as a whole reveals a distinction between the withholding and forfeiture of good time credits. The regulations provide that the forfeiture of good time credits constitutes a penalty imposed in the course of formal disciplinary action against an inmate. In contrast, the withholding of good time credits is not considered a penalty under the regulations and does not involve formal disciplinary action.

As pointed out above, forfeiture of good time credits is expressly defined in conjunction with formal disciplinary action against an inmate. K.A.R. 44-6-101(e). Consistent with the definition, K.A.R. 44-6-124(h) provides: "Good time credits *which are forfeited as a result of a penalty imposed for a disciplinary offense* shall not be restored to an inmate." (Emphasis added.) Likewise, the provisions in the regulations which classify disciplinary offenses and penalties provide loss of good time credits as a potential penalty for class I and II offenses. See K.A.R. 44-12-1301(3)(b)(2) and -1302(3)(b)(2). On the contrary, K.A.R. 44-6-124(g)(4) mandates the *withholding* of good time credits for a pattern of refusal to constructively work or participate in assigned programs, does not speak of withholding good time credits in terms of a formal disciplinary action, and does not classify withholding good time credits in terms of a penalty.

Applying these principles to K.A.R. 44-5-105(c)(1), we find that, in providing that an inmate "shall not be penalized" for refusing to participate in a formal program plan, the Secretary intended that such a refusal shall not lead to formal disciplinary action against the inmate. Therefore, when an inmate's good time credits are withheld for refusing to participate in a formal program plan pursuant to K.A.R. 44-6-124(g)(6), the inmate is not "penalized" as that term is used in articles 44-5 and 44-6 of the regulations.

Our interpretation of the regulations is consistent with the legislature's authorizing statute. K.S.A. 1994 Supp. 22-3725(d) provides that good time credits "shall be awarded on an earned basis." If Gilmore elects not to participate in assigned rehabilitative programs pursuant to K.A.R. 44-5-105(c)(1), then available good time credits shall be withheld pursuant to K.A.R. 44-6-124(g)(6) because those credits will not have been earned. As K.A.R. 44-5-105(c)(1) expressly notes, an inmate who elects not to participate in assigned programs is nevertheless subject to all of the regulations of the Secretary, including K.A.R. 44-6-124(g)(6).

We conclude that "withholding" good time credits under K.A.R. 44-6-124(g)(6) does not constitute a penalty under K.A.R. 44-5-105(c)(1) and that the trial court erred when it found the two regulations irreconcilable and ordered the restoration of Gilmore's good time credits.

Reversed.